**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-_____-_____

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**,

Plaintiff,

v.

**CHRIS THE CRAZY TRADER, INC., d/b/a CHRISTOPHER'S DODGE RAM**,
f/k/a Christopher's Dodge World

Defendant.

---

**COMPLAINT**

---

## NATURE OF THE ACTION

This is an action brought by the Equal Employment Opportunity Commission ("EEOC" or the "Commission") under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 against Defendant, Chris the Crazy Trader, Inc., d/b/a Christopher's Dodge Ram ("Defendant"), to correct unlawful employment practices and to provide appropriate relief to the Charging Party, Katrina Schmidt ("Schmidt"), as well as to other aggrieved individuals subjected to and harmed by Defendant's unlawful employment practices. As further detailed below, the Commission alleges that Defendant discriminated against Schmidt and other aggrieved individuals by creating and condoning a work environment at its Golden, Colorado auto dealership that was hostile to female, male, Black/African, and Latinx/Hispanic employees on the basis of

sex, race, and/or national origin. The acts contributing to an unlawful hostile work environment included, for example: frequent use of racial slurs and sexually derogatory comments, including by managers; sexual propositions; managers' requests for an employee to send them nude photos; and unwanted physical touching, including a coworker grabbing Schmidt's breast without consent. Defendant also engaged in retaliatory discipline and discriminatory discharge, including that Defendant discharged Schmidt because of her sex, and retaliated against employees who complained of the hostile environment or otherwise opposed Defendant's unlawful workplace practices.

## I.  JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-5 (f)(1) and(3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

3.      Venue lies in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391.

## II.  PARTIES

4.      Plaintiff, the Equal Employment Opportunity Commission ( "Commission" or "EEOC"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized

to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5.      Defendant, Chris the Crazy Trader, Inc., d/b/a Christopher's Dodge Ram ("Defendant"), is a Colorado corporation.

6.      At all relevant times, Defendant has continuously been doing business in the State of Colorado and in the city of Golden, Colorado.

7.      At all relevant times, Defendant has had at least 15 employees.

8.      At all relevant times, Defendant had more than 100 employees.

9.      In at least 2018 and 2019, Defendant had more than 200 employees.

10.      On information and belief, Defendant has had more than 200 employees from 2020 through the present.

11.      At all relevant times, Defendant has continuously been and is currently an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g) and (h).

### III.  ADMINISTRATIVE PROCEDURES

12.      More than thirty days prior to the institution of this lawsuit, Katrina Schmidt filed a Charge of Discrimination alleging that Defendant violated Title VII.

13.      On September 16, 2020, the Commission issued to Defendant a letter of determination finding reasonable cause to believe that Defendant violated Title VII.

14.      The Commission invited Defendant to join in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

15.     Conciliation efforts with Defendant did not result in a resolution acceptable to the Commission.

16.     On July 21, 2021, the Commission issued to Defendant a letter notifying Defendant that conciliation efforts had been unsuccessful.

17.     All conditions precedent to the institution of this lawsuit have been fulfilled.

### IV.  GENERAL ALLEGATIONS

18.     From at least January 2014 and continuing through present, Defendant operated the Christopher's Dodge Ramauto dealership ("the dealership"), in Golden, Colorado.

#### A.     Allegations Related to Charging Party Schmidt

19.     Charging Party Katrina Schmidt ("Schmidt") is a female.

20.     Schmidt was hired by Defendant on or about November 27, 2017 as an internet salesperson.

21.     In approximately December 2017, Defendant reassigned Schmidt to work as a salesperson.

22.     While Schmidt was employed by Defendant, her managers and/or supervisors included: General Sales Manager ("GM") Randy Reed; Sales Manager (later General Sales Manager) Darrin Hall, Sales Manager (later Used Car Manager), Ronald Dale; and Sales Manager Hai Kirchner.

23.     While Schmidt was employed by Defendant, Defendant's Human Resources Director was Art Irwin.

**i.**     ***Sex-Based Harassment and Disparate Treatment of***
***Charging Part Schmidt***

24.     While working as a salesperson, Schmidt was regularly harassed, belittled and treated negatively by male co-workers and managers based on and because of her sex.

25.     Examples of unwelcome and offensive sexual actions directed at Schmidt include but are not limited to:

   a. In or around December 2017, just weeks after Schmidt was hired, Manager Ron Dale wrapped his arm around Schmidt's neck from behind, against Schmidt's wishes.

   b. In early 2018, coworker Tyler Torres grabbed Schmidt's breast.

   c. Once or twice a month throughout Schmidt's employment, Manager Dale approached Schmidt at her desk and pushed his clothed genitals against the back of her chair or on her desk.

26.     Examples of unwelcome and offensive sexual comments directed at Schmidt include but are not limited to:

   a. In or around July 2018, coworker Johnny Prohaska told Schmidt to shut up and called her a c**t.

   b. Coworker Phil Schwed regularly discussed in Schmidt's presence the Latinx/Hispanic women he claimed to have paid for oral sex.

   c. At least weekly throughout Schmidt's employment in 2017 and 2018, Manager Dale made unwelcome and uninvited statements to Schmidt suggesting she wanted to have sexual relations with her Black male co-

worker, John Barefield ("Barefield"), often referring to Barefield's
supposedly large penis.

    d.  At least weekly, Manager Dale would make unwelcome comments and
inquiries about Schmidt's sex life with her husband, such as "what's Bill
doing, are you going to f**k him tonight?"

27.    Examples of unwelcome and offensive statements directed at Schmidt
and expressing sex discrimination and/or animus towards women include but are not
limited to:

    a.  In or around December 2018, GM Reed told Schmidt he would not hire
another woman.

    b.  In or around December 2018, when giving Schmidt her Christmas 2018
bonus check, then-General Manager Darrin Hall (promoted from Sales
Manager) remarked that even Schmidt, as the only female, was getting a
bonus, referring to her as a "bitch."

    c.  In or around December 2017, coworker Jim Kiernan told Schmidt she
could not sell trucks as a female and cursed at her, denigrating her
intelligence.

    d.  Coworker Chris Duran frequently made comments to Schmidt that she
was the only female salesperson, and women did not last at the
dealership.

28.    In fall 2018, Schmidt asked to be considered for a Finance Manager
position at the dealership.

29.     General Manager Reed told Schmidt she could not apply for the Finance Manager Position, telling her this was because "women are too much drama," or similar words to the same effect.

30.     Schmidt was also treated less favorably than male employees in her terms and conditions of employment, including, without limitation, that she was disciplined for conduct that male employees engaged in without consequence.

### ii.     *Defendant's Knowledge of the Harassment and Inaction in Response*

31.     Shortly before Schmidt was hired, a female employee reported to Defendant that Manager Dale was inappropriately touching her in ways that made her feel uncomfortable.

32.     The female employee complained to Defendant's Chief Financial Officer, Dave Eloe, on or about November 22, 2017.

33.     As a result of the November 22, 2017 complaint, Defendant learned that Manager Dale "had a habit of touching other employees", and reportedly "stood next to a female employee while thrusting his pelvis back and forth."

34.     Also as a result of the November 22, 2017 complaint, Defendant learned that Manager Dale reportedly made "lude [sic] and insensitive comments toward other employees (primarily towards males)."

35.     Defendant issued a written reprimand to Manager Dale on November 24, 2017.

36.     In spite of the November 24, 2017 a written reprimand, Manager Dale began harassing Schmidt in December 2017, right after she was hired on November 27, 2017.

37.     Schmidt repeatedly complained to Sales Manager Darrin Hall about some or all of the above-alleged acts of discrimination and harassment.

38.     Manager Darrin Hall took no action and allowed the harassment to worsen.

39.     At times, Manager Darrin Hall laughed at Schmidt's complaints.

40.     In spring 2018, Schmidt reported to General Manager Reed that coworker Torres grabbed her breast.

41.     Schmidt repeatedly complained to GM Reed about the sexual harassment she experienced at the dealership.

42.     GM Reed took no action to prevent or remedy the sexually harassing conduct that Schmidt reported.

43.     Through its managers, Defendant knew or should have known about the sex discrimination and harassment against women that was ongoing in the workplace.

44.     By failing to act, Defendant, through its managers, condoned the sex discrimination and harassment in the workplace and allowed it to continue and worsen.

### iii.     *Charging Party Schmidt's Discharge*

45.     Schmidt was discharged by Defendant on January 10, 2019.

46.     Commissioned sales employees were allowed to take an hour or so meal break during their shifts.

47.     Schmidt was a commissioned sales employee on January 10, 2019.

48.     On January 10, 2019, Schmidt received permission for her meal break from Manager Reed.

49.     Schmidt returned from her lunch break in less than an hour.

50.     Schmidt was on the dealership lot when Manager Kirchner called and angrily demanded to know where she was.

51.     When Schmidt said she was on the lot, Kirchner discharged her, saying she was "f***ing done."

52.     The next day, Manager Kirchner told other employees words to the effect that he had "fired the only c**t," referring to Schmidt.

53.     At the time of her discharge, Schmidt's job performance was satisfactory.

54.     After Defendant discharged Schmidt, Defendant's managers agreed that Defendant should not hire any more female sales representatives.

**B.**     **Allegations Related to Sexually Hostile Work Environment**

55.     Since at least 2014, employees other than Schmidt were also subjected to offensive and unwelcome sex-based conduct, statements, and/or harassment, constituting a hostile work environment, while working for Defendant.

56.     Examples of unwelcome and offensive conduct directed at female employees included, without limitation:

a.     Sales Manager/Used Car Manager Ron Dale frequently made unwelcome and offensive sexual remarks and sexual innuendo to female employees;

    b.   On at least one occasion, Manager Dale suggested he would pay a female employee for a sex act(s);

    c.   On one or more occasions, Manager Dale asked a female employee to send him naked pictures of herself;

    d.   Manager Dale frequently and openly stared at female employees' chests;

    e.   Manager Dale made uninvited and unwelcome statements to at least one female employee that she should have sex with Barefield because of his "Black Anaconda dick" and "purple lips."

    f.   Human Resources Director Irwin and other male employees frequently ogled female employees and persistently stared at female employees' chests;

    g.   In or around May and June 2018, female employee Jaime Guerra observed Parts and Service Director Cliff Hall, looking at pornography on his computer.

    h.   In June 2018, Service Director Cliff Hall cornered Guerra in a secluded file room and made inappropriate sexual comments and/or unwelcome solicitation of sexual contact.

57.   Examples of unwelcome and offensive sex-based conduct directed at male employees included, without limitation:

    a.   At least weekly, Manager Dale made offensive and unwanted sexual overtures, comments and conduct to John Barefield.

b.  When walking past Barefield's desk, Manager Dale would grab his own genitals and nod his head toward the bathroom, suggesting that Barefield join Dale in the bathroom.

c.  In April 2019, Manager Dale purposefully rubbed his penis on Barefield's buttocks while following him out of the dealership door.

d.  Manager Dale frequently made unwelcome sexual remarks and innuendo directed towards and/or about Barefield, including comments about spankings and sitting in Manager Dale's lap.

e.  Manager Dale made comments about male employees' penises and penis size.

f.  In November 2017, Manager Dale was "reported to have mad lude and Insensitive comments toward other employees (primarily towards males) [*sic*]."

58.  Defendant was made aware of the unwelcome sexual comments, conduct, and/or sexual harassment directed at male and female employees.

59.  John Barefield reported the unwelcome and offensive sexual conduct to Human Resources Director Art Irwin in approximately April 2019.

60.  Jamie Guerra reported the unwelcome and offensive sexual conduct to Sales Manager Darrin Hall in approximately June 2018.

61.  Additional employees also complained to Defendant, through its Managers, about unwelcome and offensive sexual conduct and comments in the work environment.

62.     The unwelcome sexual comments and conduct directed at both female and male employees was sufficiently severe or pervasive to alter the conditions of employment for the employees subjected to the harassment.

63.     Through its managers, Defendant knew or should have known about the sex discrimination and harassment against male and female employees that was ongoing in the workplace.

64.     Despite its knowledge, Defendant failed to take timely or sufficient actions to stop the sex-based unwelcome statements, conduct, and harassment and/or to prevent it from continuing.

**C.     Allegations Related to Race and/or National Origin Discrimination**

65.     Black/African employees were also subjected to offensive comments and conduct based on race, including, without limitation, the following:

   a.   Frequent derogatory, unwelcome, and offensive stereotypical comments to or about Black employees, including but not limited to comments about their skin color, body odor, and the size of their penises.

   b.   Frequent derogatory and unwelcome name calling and/or comments to or about employees by non-Black employees including use of the N-word.

66.     Latinx/Hispanic employees were also subjected to offensive comments and conduct about Latinx/Hispanic employees.  These included, without limitation:

   a.   Manager Dale regularly greeted Latinx/Hispanic employees saying, "my Mexican friend."

b.   Upon information and belief, Manager Dale also referred to Latinx/Hispanic employees as "beaner[s]."

c.   Salesperson Phil Schwed made derogatory comments and offensive jokes about and directed towards "Mexicans" or Latinx/Hispanic coworkers.

d.   Salesperson Phil Schwed frequently commented about paying Latinx/Hispanic women for oral sex.

67.   Defendant was made aware of the derogatory, offensive, and unwelcome race- and/or national origin-based statements and conduct directed towards Black/African and Latinx/Hispanic employees.

68.   A Latinx/Hispanic employee reported the derogatory, offensive, and unwelcome conduct to Human Resources Director Art Irwin in approximately March 2015.

69.   The derogatory, offensive, and unwelcome race- and/or national origin-based statements and conduct were sufficiently severe or pervasive that they altered the terms or conditions of employment for Defendant's Black/African and Latinx/Hispanic employees.

70.   Through its managers, Defendant knew or should have known about the discrimination and harassment against Black/African and Latinx/Hispanic employees that was ongoing in the workplace.

71.     Despite its knowledge Defendant failed to take timely or sufficient actions to stop the race- and/or national origin-based unwelcome statements, conduct, and harassment and/or to prevent it from continuing.

**D.     Allegations Related to Retaliation**

72.     Various employees engaged in protected conduct by reporting or complaining to managers the discriminatory and harassing conduct based on sex, race, and/or national origin.

73.     Defendant took retaliatory actions against employees who reported or complained about discriminatory or harassing conduct based on sex, race, and/or national origin.

74.     Examples of Defendant's retaliatory acts include, without limitation:

   a.   In or around July 2018, Jaime Guerra was discharged after complaining of sexual harassment approximately one month earlier, in June 2018.

   b.   After Charging Party Schmidt complained of harassment to Manager Darrin Hall, Hall yelled at Schmidt to "shut her mouth" and told her that her male coworkers could "do what they wanted."

   c.   In fall 2018, after Schmidt complained of discrimination to GM Reed, he told Schmidt to "shut up" and that if she complained of harassment again she would be discharged.

**FIRST CLAIM FOR RELIEF**
**(Discrimination Based on Sex (Female) - 42 U.S.C. § 2000e-2(a))**

75.     The Commission reasserts and fully incorporates all of the allegations above.

14

76.     Since at least January 2014, Defendant has engaged in unlawful employment practices in Colorado in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) because of sex, female.

77.     Since at least January 2014, Defendant subjected female employees, including Katrina Schmidt and Jaime Guerra, to a sexually hostile work environment and disparate terms and conditions of employment, because they were female. This includes but is not limited to unwelcome sexual touching, sexist name-calling and demeaning comments, unwanted sexual overtures, ogling female employees, failure to respond to complaints of sexual harassment, harsher discipline for female employees, and retaliation against female employees who complained.

78.     Since at least January 2014, Defendant allowed managers and employees, including, but not limited to, Managers Ron Dale, Darrin Hall, and Randy Reed, to verbally and physically harass female employees based on their sex, including offensive and unwelcome conduct and/or statements.

79.     The discriminatory and harassing conduct alleged above was sufficiently severe or pervasive to alter the terms or conditions of employment for female employees.

80.     Since at least January 2014, each of Defendant's managers who engaged in and/or failed to correct unlawful employment practices, including but not limited to GM Reed, Manager Dale, Manager Kirchner, Manager Darrin Hall, and Service Director Cliff Hall, had authority to take tangible employment actions against female employees, including Schmidt, Guerra, and other aggrieved individuals.

81.     Since at least January 2014, Defendant has been vicariously liable for sex-based discrimination and/or harassment of female employees by its managers; this includes, without limitation, GM Reed, Manager Dale, Manager Kirchner, Manager Darrin Hall, and Service Director Cliff Hall.

82.     Since at least January 2014, Defendant knew or should have known about the sexually hostile work environment for women that existed at Defendant's place of business.

83.     Defendant received multiple complaints about the sexually hostile work environment for female employees, as further alleged above.

84.     Despite having actual and/or constructive knowledge of the sexually hostile work environment, Defendant failed to act to prevent further discrimination and/or harassment based on sex (female).

85.     Defendant failed to take timely action to correct or remedy the existing hostile work environment and/or to prevent future discrimination against and/or harassment of female employees because of their sex.

86.     Defendant failed to exercise reasonable care to halt or prevent statements and conduct that were unwelcome and offensive based on sex, by its employees and/or others in its work environment.

87.     The effect of the practices complained of above has been to deprive Katrina Schmidt, Jaime Guerra, and other female employees of equal employment opportunities and otherwise adversely affect their status as employees because of their female sex.

88.     The unlawful employment practices complained of above were intentional.

89.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Katrina Schmidt, Jaime Guerra, and other female employees.

90.     The unlawful employment practices complained of above constituted a hostile work environment in the totality of circumstances.  The alleged discrimination based on sex (female) constitutes discrimination and a hostile work environment, either by itself and/or in combination with discriminatory or unlawful acts based on sex (male), race (Black/African), and/or national origin (Latinx/Hispanic).

<u>**SECOND CLAIM FOR RELIEF**</u>
**(Discrimination Based on Sex (Male) - 42 U.S.C. § 2000e-2(a))**

91.     The Commission reasserts and fully incorporates all of the allegations above.

92.     Since at least January 2014, Defendant has engaged in unlawful employment practices in Colorado in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) because of sex, male.

93.     Since at least January 2014, Defendant subjected male employees to a hostile work environment and disparate terms and conditions of employment based on sex, male. This includes but is not limited to, unwelcome sexual touching, demeaning sexual comments, unwanted sexual overtures, sexual race-related stereotypes, failure to respond to complaints about sexual harassment and retaliation against employees who complained about sexual harassment.

94.     Since at least January 2014, Defendant allowed managers, including Manager Dale, to verbally and physically harass male employees based on their sex.

95.     The discriminatory and harassing conduct alleged above was sufficiently severe or pervasive to alter the terms or conditions of employment for male employees subjected to it.

96.     Since at least January 2014, each of Defendant's managers who engaged in or failed to correct unlawful employment practices, including but not limited to Manager Dale, had authority to take tangible employment actions against male employees, including Barefield and other aggrieved individuals.

97.     Since at least January 2014, Defendant has been vicariously liable for sex-based discrimination and/or harassment of male employees by its managers, including Manager Dale.

98.     Since at least January 2014, Defendant knew or should have known about the unwelcome and offensive sexual conduct and comments towards its male employees.

99.     Defendant received reports of the sexually hostile work environment for male employees, as further alleged above, including without limitation, Defendant's own written report of "lude and insensitive" comments by Manager Dale directed at male employees.

100.    Since at least January 2014, Defendant failed to exercise reasonable care to halt or prevent statements and conduct that were unwelcome and offensive based on male sex, by its employees and/or others in its work environment.

101.    Defendant failed to take timely steps to remedy or correct the existing hostile work environment for men, or to prevent future discrimination and/or harassment of male employees because of their sex.

102.    The effect of the practices complained of above has been to deprive Barefield and other male employees of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

103.    The unlawful employment practices complained of above were intentional.

104.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Barefield and other male employees.

105.    The unlawful employment practices complained of above constituted a hostile work environment in the totality of circumstances.  The alleged discrimination based on sex (male) constitutes discrimination and a hostile work environment, either by itself and/or in combination with discriminatory or unlawful acts based on sex (female), race (Black/African), and/or national origin (Latinx/Hispanic).

## THIRD CLAIM FOR RELIEF
### (Discrimination Based on Race and/or National Origin 42 U.S.C. § 2000e-2(a))

106.    The Commission reasserts and fully incorporates all of the allegations above.

107.    Since at least January 2014, Defendant has engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) because of race and/or national origin, Black/African, and/or Latinx/Hispanic.

108.   Since at least January 2014, Defendant subjected aggrieved individuals to a hostile work environment and disparate terms and conditions of employment based on their race and/or national origin, Black/African and/or Latinx/Hispanic. This includes but is not limited to, racial stereotypes, demeaning and/or derogatory racial comments, racial and ethnic slurs.

109.   Since at least January 2014, Defendant allowed managers and employees, including but not limited to Manager Ron Dale, to verbally and physically harass Black/African and Latinx/Hispanic employees based on their race and/or national origin.

110.   The discriminatory and harassing conduct alleged above was sufficiently severe or pervasive to alter the terms or conditions of employment for Black/African and Latinx/Hispanic employees.

111.   Since at least January 2014, each of Defendant's managers who engaged in or failed to correct unlawful employment practices, including but not limited to Managers Darrin Hall and Ron Dale, had authority to take tangible employment actions against the Black/African employees.

112.   Since at least January 2014, each of Defendant's managers who engaged in or failed to correct unlawful employment practices, including but not limited to Managers Darrin Hall and Ron Dale, had authority to take tangible employment actions against the Latinx/Hispanic employees.

113.   Since at least January 2014, Defendant has been vicariously liable for the racially hostile work environment for Black/African and Latinx/Hispanic employees

created by its managers, including Managers Darrin Hall and Ron Dale, and has failed to exercise reasonable care to prevent and correct promptly any discriminatory or harassing behavior based on race and/or national origin.

114.   Since at least January 2014, Defendant knew, or should have known, about the offensive racial and ethnic conduct and comments towards its Black/African and Latinx/Hispanic employees.

115.   Defendant received at least one complaint about the hostile work environment for Black/African and/or Latinx/Hispanic employees, as further alleged above.

116.   Despite having actual and/or constructive knowledge of the hostile work environment, Defendant failed to act to prevent further discrimination and/or harassment based on race and/or national origin (Black/African and Latinx/Hispanic).

117.   Defendant failed to take timely action to correct or remedy the existing hostile work environment or to prevent future discrimination against and/or harassment of Black/African and Latinx/Hispanic employees because of their race and/or national origin (Black/African and Latinx/Hispanic).

118.   Defendant failed to exercise reasonable care to halt or prevent statements and conduct that was derogatory, offensive, and unwelcome based on race and/or national origin (Black/African and Latinx/Hispanic) by its employees and/or others in its work environment.

119.   The effect of the practices complained of above has been to deprive the Black/African and Latinx/Hispanic employees of equal employment opportunities and

otherwise adversely affect their status as employees because of their race and/or national origin.

120.    The unlawful employment practices complained of above were intentional.

121.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Black/African and Latinx/Hispanic employees.

122.    The unlawful employment practices complained of above constituted a hostile work environment. The hostile work environment arises from the totality of circumstances. The alleged discrimination based on race and/or national origin constitutes discrimination and a hostile work environment, either by itself and/or in combination with discriminatory or unlawful acts based on sex (female), and/or sex (male).

## FOURTH CLAIM FOR RELIEF
**[Discriminatory Discharge Based on Sex - 42 U.S.C. § 2000e-2(a)]**

123.    The Commission reasserts and fully incorporates all of the allegations above.

124.    Since at least May 2018, Defendant has engaged in unlawful practices in violation of Section 703(a) of Title VII, 42 U.S.C. §§ 2000e-2(a) by discharging Katrina Schmidt and other aggrieved individuals because of sex.

125.    Throughout her employment, including at the time of discharge, Schmidt's performance as a salesperson was satisfactory.

126.    Defendant, through Manager Hai Kirchner, discharged Schmidt on or about January 10, 2019.

127.    Upon discharging Schmidt, Manager Kirchner evinced a discriminatory motive because of sex; this included, without limitation, Kirchner stating that he "fired the c**t" when discussing Schmidt's discharge.

128.    The effect of the practices complained of above was to deprive Katrina Schmidt, Jaime Guerra, and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their sex (female).

129.    The unlawful employment practices complained of above were intentional.

130.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Katrina Schmidt and other aggrieved individuals.

## FIFTH CLAIM FOR RELIEF
### [Retaliation-42 U.S.C. § 2000e-3(a)]

131.    The Commission reasserts and fully incorporates all of the allegations above.

132.    Since at least May 2018, Defendant has engaged in unlawful retaliatory employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

133.    Since at least May 2018, Jaime Guerra and other aggrieved individuals opposed the discriminatory and harassing conduct based on sex, race, and/or national origin by reporting or complaining to Defendant's managers about the conduct.

134.    Defendant subjected Jaime Guerra and other aggrieved individuals to adverse employment actions, including without limitation, retaliatory discharge, because of their opposition to unlawful employment practices,

135.    Defendant's retaliatory acts include, without limitation, those alleged in Paragraph 74 above.

136.    The effect of the practices complained of above has been to deprive Jaime Guerra and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because they opposed unlawful employment practices.

137.    The unlawful retaliatory employment practices complained of above were intentional.

138.    The unlawful retaliatory employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Jaime Guerra and other aggrieved individuals who were employees of Defendant.

## **PRAYER FOR RELIEF**

*WHEREFORE*, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, successors, assigns, and all persons in active concert or participation with them from engaging in any practice that permits discrimination, including harassment because of sex, race, and/or national origin, and any other employment practice which discriminates on the basis of sex, race, and/or national origin.

B.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, successors, assigns, and all persons in active concert or participation with them from engaging in any practice that permits retaliation against employees because they opposed unlawful employment practices, made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII or because they associated with individuals who opposed unlawful employment practices under Title VII.

C.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for female, Black/African, and Latinx/Hispanic individuals, and for individuals who oppose unlawful employment practices or associate with individuals who opposed unlawful employment practices, and individuals who participate in proceedings with the EEOC.

D.      Order Defendant to institute and carry out policies, practices, and programs that prevent workplace harassment based on sex, race, and national origin, and provide suitable means for employees to report any alleged harassment, and provide assurance of prompt and fair investigation of any such allegations and prompt remedial measures.

E.      Order Defendant to institute and carry out policies, practices, and programs that eradicate the effects of its past and present unlawful employment practices, including sex discrimination, race discrimination, national origin discrimination, and retaliation.

F.      Order Defendant to make whole Katrina Schmidt and other aggrieved individuals by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to reinstatement and/or frontpay.

G.      Order Defendant to make whole Katrina Schmidt and other aggrieved individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above.

H.      Order Defendant to make whole Katrina Schmidt and other aggrieved individuals by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other nonpecuniary losses in amounts to be determined at trial.

I.      Order Defendant to pay Katrina Schmidt and other aggrieved individuals punitive damages for Defendant's discriminatory actions carried out with malice or reckless disregard for the employee's federally protected rights to work in an environment free of discrimination based on sex, race, and/or national origin, in amounts to be determined at trial.

J.      Grant such further relief as the Court deems necessary and proper in the public interest.

K.      Award the Commission its costs in this action.

DATED : September 30, 2021,_____.

*Respectfully submitted*,

Gwendolyn Young Reams
Acting General Counsel

Lisa Morelli
Acting Associate General Counsel

Mary Jo O'Neill
Regional Attorney
Phoenix District Office

Rita Byrnes Kittle
Supervisory Trial Attorney

*/s/ Nathan Foster*
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Denver Field Office,
950 17th Street, Suite 300
Denver, CO 80202
Tel: 720.779.3634
nathan.foster@eeoc.gov

Casey Arellano[*]
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office
3300 North Central Ave., Suite 690
Phoenix, Arizona 85012
Tel: 602.661.0013
casey.arellano@eeoc.gov

**Please Note**:: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.

---

[*] Application for attorney admission in the District of Colorado forthcoming.