## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 21-cv-02666-NYW-TPO

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Plaintiff,

v.

CHRIS THE CRAZY TRADER INC., d/b/a CHRISTOPHER'S DODGE RAM,

     Defendant.

---

### ORDER

---

This matter is before the Court on:

(1)    Plaintiff EEOC's Motion for Partial Summary Judgment, [Doc. 155, filed March 1, 2024],[1] and

(2)    Plaintiff EEOC's Motion for Partial Judgment on the Pleadings (together, the "Motions"), [Doc. 156, filed March 1, 2024].

The Court has reviewed the Motion and the related briefing, the applicable case law, and the record before the Court, and concludes that oral argument would not materially assist in the resolution of the Motions. For the reasons set forth below, the Motion for Partial Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**, and the Motion for Partial Judgment on the Pleadings is respectfully **GRANTED in part** and **DENIED in part**.

---

[1] When citing to deposition transcripts, the Court cites the page and line numbers in the transcript rather than the page numbers assigned by the Court's electronic filing system.

**BACKGROUND**

Plaintiff Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") brings this enforcement action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* [Doc. 1]. EEOC's claims derive from a charge of discrimination filed by Katrina Schmidt ("Ms. Schmidt") against Defendant Chris the Crazy Trader Inc. d/b/a Christopher's Dodge Ram ("Defendant" or "CDR"). *See* [Doc. 155-2; Doc. 155-5]. Ms. Schmidt complained that she suffered continuous harassment and demeaning, sexist comments from male salesmen and other employees—both peers and managers—while employed at CDR, an automobile dealership located in Golden, Colorado. [Doc. 155-5 at 2–3]. Specifically, Ms. Schmidt alleged that she was the victim of repeated hostile statements directed at her sex and that CDR's managers not only knew about and allowed this conduct, but some of them also participated in it. [*Id.*]. Ms. Schmidt further alleged she was prevented from applying for a promotion due to her sex. [*Id.*]. According to Ms. Schmidt, Black employees at CDR experienced similar discriminatory treatment. [*Id.*]. After investigating Ms. Schmidt's charge, EEOC concluded that there was reasonable cause to believe CDR had violated Title VII. *See* [Doc. 155-8].

EEOC now proceeds on behalf of nine aggrieved individuals ("Aggrieved Individuals"), employed or formerly employed by CDR, including Ms. Schmidt. [Doc. 1]. In its Complaint, EEOC claims that CDR maintained a hostile work environment that discriminated against employees based on sex, race, and national origin. [*Id.* at ¶¶ 75–122]. EEOC also brings claims for discriminatory discharge and retaliation. [*Id.* at ¶¶ 123–38]. EEOC requests injunctive relief against CDR, compensatory damages for the

Aggrieved Individuals, and a backpay award for Aggrieved Individual Jaime Guerra ("Ms. Guerra").  [*Id.* at 24–26; Doc. 155 at ¶ 17; Doc. 155-10 at 3–5].

In its Answer, CDR asserts twenty affirmative defenses.  [Doc. 8 at 10–14].  EEOC seeks summary judgment against the entirety of CDR's second (mitigation of damages), third (after-acquired evidence), eleventh (real party in interest), and twelfth (collateral source) defenses, and parts of CDR's first (exhaustion and statute of limitations), and sixth affirmative defenses (laches).  *See generally* [Doc. 155].  EEOC also seeks judgment on the pleadings against CDR's first (statute of limitations), fifth (non-discriminatory motive and same actions absent discriminatory motive), sixth (unclean hands), ninth (at-will employment status), fourteenth (comparative fault), fifteenth (proximate cause), nineteenth (attorney's fees), and twentieth defenses (reservation of right to amend).  *See generally* [Doc. 156].  Defendant has responded in opposition to the Motions, [Doc. 173; Doc. 175], and EEOC has replied, [Doc. 176; Doc. 181].  The Court considers each Motion in turn.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).  To satisfy its burden at summary

judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  In considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  At all times, the Court views the record in the light most favorable to the nonmoving party.  *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## II.    UNDISPUTED MATERIAL FACTS

The following material facts are drawn from the summary judgment record and are undisputed unless otherwise noted.[2]

### A.    Procedural History

1.    This case originates from a charge of discrimination filed by charging party Katrina Schmidt ("Ms. Schmidt").  [Doc. 155 at ¶ 4; Doc. 175 at 2 ¶ 4; Doc. 155-2].

2.    Ms. Schmidt's last day of employment at CDR was January 10, 2019.  [Doc. 155 at ¶ 3; Doc. 175 at 2 ¶ 3; Doc. 155-1].

3.    Ms. Schmidt filed her initial charge of discrimination with EEOC on March 8, 2019.  [Doc. 155 at ¶ 4; Doc. 175 at 2 ¶ 4; Doc. 155-2].

---

[2] The Court does not consider these facts in deciding the Motion for Partial Judgment on the Pleadings.  *See SKS Invs., Ltd. v. Gilman Metals Co.*, No. 12-cv-00806-LTB-CBS, 2013 WL 249099, at *1 (D. Colo. Jan. 23, 2013) ("Matters outside the pleadings should be excluded from the Court's analysis unless the Court, in its discretion, treats the motion as one for summary judgment under Rule 56.")

4.  Nine days later, EEOC served a notice of the charge to CDR.  [Doc. 155 at ¶ 5; Doc. 175 at 2 ¶ 6; Doc. 181 at 1 ¶ 5; Doc. 155-3].[3] [4]

5.  Ms. Schmidt filed an amended charge of discrimination on July 1, 2019.  [Doc. 155 at ¶ 7; Doc. 175 at 2 ¶ 8; Doc. 181 at 1 ¶ 7; Doc. 155-5].

6.  EEOC sent CDR notice of the amended charge on July 5, 2019.  [Doc. 155 at ¶ 8; Doc. 175 at 2 ¶ 9; Doc. 155-6].

7.  Defendant submitted position statements in response to both the initial and amended charges.  [Doc. 155 at ¶¶ 6, 9; Doc. 175 at 2 ¶¶ 7, 10; Doc. 155-4; Doc. 155-7].

8.  Defendant submitted its response to the amended charge on August 9, 2019.  [Doc. 155 at ¶ 9; Doc. 175 at 2 ¶ 10; Doc. 155-7].

9.  In September 2020, EEOC informed CDR that EEOC had determined, based on its investigation of Ms. Schmidt's charge, that there was reasonable cause to believe CDR had violated Title VII.  [Doc. 155 at ¶ 10; Doc. 175 at 2 ¶ 11; Doc. 155-8].[5]

---

[3] CDR points out that the notice was sent to an attorney that had represented CDR in the past.  [Doc. 175 at 2 ¶ 6].  But it does not dispute that EEOC sent, and CDR received, the notice within the statutory period.  *See* [*id.*; Doc. 181 at 1 ¶ 5].  The Court therefore deems this fact undisputed.  *See* Fed. R. Civ. P. 56(e)(2).

[4] As EEOC notes in its Reply, CDR's Response misnumbers the paragraphs in its response to EEOC's statement of undisputed facts.  [Doc. 181 at 1 n.1].  Paragraph 6 in the Response refers to paragraph 5 in the Motion for Partial Summary Judgment, and the error through paragraph 25 in the Response.  *Compare* [Doc. 155 at ¶¶ 5–25], *with* [Doc. 175 at 2 ¶¶ 6–25].

[5] CDR disputes that EEOC issued the determination letter on September 16, 2020, the same day the letter was signed.  [Doc. 175 at ¶ 11].  But CDR does not dispute that it received the letter or that the letter arrived on or around September 16.  Nor does it suggest that any trivial delay between the letter's signature and receipt would be material to this case.  The Court therefore deems this fact undisputed.  Fed. R. Civ. P. 56(e)(2).

10.    Pursuant to EEOC's letter of determination, the Parties engaged in conciliation efforts "during the summer of 2021."  [Doc. 155 at ¶¶ 11–12; Doc. 175 at 2 ¶¶ 12–13; Doc. 155-8; Doc. 155-9].[6]

11.    On July 21, 2021, EEOC sent CDR a letter stating that conciliation efforts had failed.  [Doc. 155 at ¶ 13; Doc. 175 at 2 ¶ 14; Doc. 155-9].

12.    EEOC filed this lawsuit on September 30, 2021.  [Doc. 1].

**B.    Ms. Guerra's Backpay Claim**

13.    Of the nine Aggrieved Individuals in this case, EEOC seeks backpay only for Ms. Guerra.  [Doc. 155 at ¶¶ 16–17; Doc. 175 at 2 ¶¶ 17–18; Doc. 155-10 at 3].

14.    EEOC seeks a backpay award for the period beginning on July 20, 2018 and continuing through September 2018.  [Doc. 155 at ¶ 21; Doc. 175 at 2 ¶ 22; Doc. 155-10 at 3].

15.    CDR discharged Ms. Guerra on July 20, 2018.  [Doc. 155 at ¶ 18; Doc. 175 at 2 ¶ 19; Doc. 155-11].

16.    CDR's separation notice to Ms. Guerra states that she was discharged due to performance issues and her failure to cover her tattoos at work.  [Doc. 155 at ¶ 19; Doc. 175 at 2 ¶ 20; Doc. 155-11].

---

[6] CDR denies this fact because EEOC's post-conciliation letter only states that conciliation efforts were "unsuccessful."  [Doc. 175 at 2 ¶ 13; Doc. 155-9].  CDR may believe that EEOC's conciliation efforts were insufficient, but it does not deny that EEOC engaged in conciliation or that the conciliation occurred during summer 2021.  [Doc. 175 at 2 ¶ 13]; *see also* [Doc. 175-8 (CDR's attorney referring to EEOC's "conciliation efforts" and identifying purported deficiencies in those efforts)].  Accordingly, the Court deems it undisputed that the Parties engaged in conciliation in summer 2021.  *See Pasternak v. Lear Petrol. Expl., Inc.*, 790 F.2d 828, 834 (10th Cir. 1986) ("Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment.")

17.    After CDR discharged Ms. Guerra, she was unemployed for approximately one month before she started working as a driver for Lyft.  [Doc. 155 at ¶ 25; Doc. 175 at 2 ¶ 25; Doc. 155-13 at 75:24–76:7].[7]

## III.    ANALYSIS

### A.    Exhaustion

EEOC seeks summary judgment against CDR's affirmative defense[8] that EEOC failed to exhaust the administrative prerequisites to filing an enforcement action.  [Doc. 155 at 6–11]; *see also* [Doc. 8 at 10].  "Title VII . . . imposes a duty on the EEOC to attempt conciliation of a discrimination charge prior to filing a lawsuit."  *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015).  Before suing, EEOC must have (1) received a formal charge of discrimination against an employer; (2) served notice of the charge to the employer; (3) investigated the charge; (4) determined whether there is "reasonable

---

[7] CDR offers a conclusory denial of this fact because it relies on Ms. Guerra's "uncorroborated statement that lacks credibility."  [Doc. 175 at ¶ 25].  But deposition statements are permissible evidence at summary judgment.  Fed. R. Civ. P. 56(c)(1)(A).  CDR fails to explain why this particular statement lacks credibility or identify any evidence that contradicts Ms. Guerra's testimony.  The Court therefore considers this fact undisputed for purposes of the Motion for Partial Summary Judgment.  Fed. R. Civ. P. 56(e)(2); *see also Pasternak*, 790 F.2d at 834.

[8] Conciliation is considered a condition precedent to suit, rather than an affirmative defense.  *See EEOC v. DolGenCorp, LLC*, No. 21-cv-00295-GLJ, 2024 WL 402921, at *10 (E.D. Okla. Feb. 2, 2024).  While the ultimate burden falls on the EEOC to show adequate conciliation efforts, *see EEOC. v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1268 (D. Colo. 2007), the remedy for inadequate conciliation is an order staying the case and requiring the parties to conciliate, not limiting or defeating the plaintiff's ability to recover, *DolGenCorp*, 2024 WL 402921, at *11 (quoting *EEOC v. Darden Rests., Inc.*, No. 15-cv-20561-JAL-JG, 2016 WL 9488709, at *3 (S.D. Fla. June 1, 2016) ("To qualify as an affirmative defense, the defense must raise facts which will limit or defeat plaintiff's ability to recover." (citing *EEOC v. Blinded Veterans Ass'n*, 128 F. Supp. 3d 33, 42 (D.D.C. 2015) (citing *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 495 (2015)))).

cause" to believe the charge is true and informed the employer of its findings; and (5) "endeavor[ed]" to resolve the charge through conciliation.  42 U.S.C. § 2000e-5(b); *cf. EEOC v. Original Honeybaked Ham Co. of Ga.*, 918 F. Supp. 2d 1171, 1176 (D. Colo. 2013).  These requirements reflect Congress's choice of "cooperation and voluntary compliance as its preferred means" to address workplace discrimination.  *Mach Mining*, 575 U.S. at 486 (cleaned up).

CDR focuses its challenge on EEOC's compliance with its conciliation obligations.  *See* [Doc. 175 at 10–13].  In *Mach Mining*, the Supreme Court explained that judicial review of EEOC's compliance with the conciliation requirement is "relatively barebones." 575 U.S. at 494.  This "limited" review comprises two—and only two—components.  *Id.* at 494–95.  First, "EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of 'reasonable cause.' Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result."  *Id.* at 494 (citation omitted). Second, "EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice."  *Id.*  The Supreme Court concluded:

> Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute.  At the same time, that relatively barebones review allows the EEOC to exercise all the expansive discretion Title VII gives it to decide how to conduct conciliation efforts and when to end them.  And such review can occur consistent with the statute's non-disclosure provision, because a court looks only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.*, statements made or positions taken) during those discussions.

*Id.* (citation omitted).

CDR argues EEOC failed to meet this low threshold for conciliation for several related reasons. First, CDR contends that the charge of discrimination and EEOC's subsequent communications fail to give CDR "adequate notice" of the discrimination experienced by Aggrieved Individuals other than Ms. Schmidt. [Doc. 175 at 10–11]. Second, it argues that EEOC failed to identify the other Aggrieved Individuals or engage in conciliation with respect to their specific claims, leaving those Aggrieved Individuals' claims unexhausted. [*Id.* at 10–12]. Third, EEOC declined to identify the alleged perpetrators or otherwise properly define the "scope" of its claims. [*Id.* at 10–11]. Finally, CDR argues that EEOC improperly failed to make a separate reasonable cause determination for each Aggrieved Individual prior to initiating conciliation. [*Id.* at 11]. The Court addresses each argument in turn, mindful that "the point of conciliation is to resolve discrimination claims informally through voluntary compliance, not to set up a defense for later." *EEOC v. W. Distrib. Co.*, 218 F. Supp. 3d 1231, 1242 (D. Colo. 2016) (quoting *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 367–68 (1977) ("Congress, in enacting Title VII, chose cooperation and voluntary compliance . . . as the preferred means of achieving its goals." (quotation and parentheses omitted))).

### 1.  Whether the Allegations in the Charge of Discrimination and Determination Letter Gave CDR Adequate Notice

CDR argues that EEOC failed to inform CDR of the discrimination alleged by Aggrieved Individuals other than Ms. Schmidt. [Doc. 175 at 10–11]. This misunderstands the nature of the discrimination alleged by Ms. Schmidt. Ms. Schmidt alleges in her amended charge that female and Black employees in general, not just Ms. Schmidt herself, were subjected to a hostile work environment at CDR. *See* [Doc. 155-5]. She alleges that male employees consistently harassed female employees with degrading and

inappropriate comments, and that CDR's managers would deny female applicants from hiring or promotion on the basis of sex. [*Id.* at 2–3]. She also alleges that a Black employee was subjected to racist comments and later demoted. [*Id.* at 3]. This is precisely the type of conduct that CDR now contends EEOC failed to disclose during conciliation. *See* [Doc. 175 at 10]; *see also, e.g.*, [Doc. 175-9 (Black employee alleging he was called a racial slur); Doc. 175-10 at 12 (female employee alleging male employees "routinely harass[ed]" her with demeaning comments); Doc. 175-11 at 13 (female employee alleging male manager denied her advancement because of her sex)]. Because Ms. Schmidt's charge of discrimination gave CDR notice of the "specific allegation" of discriminatory conduct at CDR, *Mach Mining*, 575 U.S. at 494, the Court turns to whether EEOC must identify all Aggrieved Individuals or engage in specific conciliation for each Aggrieved Individual.

### 2.     Whether EEOC Must Identify All Aggrieved Individuals

Courts have repeatedly rejected the argument that EEOC must identify all impacted employees or disclose every discriminatory incident to fulfill its conciliation obligations. *"Mach Mining* makes it clear that decisions like whether 'to lay all its cards on the table' are left to the EEOC, and the EEOC need not 'lay out the factual and legal basis for all its positions.'" *W. Distrib. Co.*, 218 F. Supp. 3d at 1238 (quoting *Mach Mining*, 575 U.S. at 492) (holding that EEOC need not identify all aggrieved individuals during conciliation); *see also Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1200 (9th Cir. 2016) (concluding that EEOC need not "identify and conciliate on behalf of each individual aggrieved employee during the investigation process prior to filing a lawsuit seeking recovery on behalf of a class"); *EEOC v. Bass Pro Outdoor World, LLC*, 826 F.3d

791, 805 (5th Cir. 2016) (concurring with *Geo Group* and finding that EEOC satisfied conciliation requirement where conciliation focused on class-based rather than individual claims). Instead, EEOC's notice to an employer, usually in its reasonable cause determination letter, need only describe "what the employer has done and which employees (or what class of employees) have suffered as a result." *Mach Mining*, 575 U.S. at 494. When EEOC informs an employer of the "specific allegation" of discrimination, *id.*, the employer has the opportunity to conduct its own investigation, estimate which employees were impacted, and attempt voluntary compliance during conciliation, *see EEOC v. Unit Drilling Co.*, 4 F. Supp. 3d 1257, 1263–64 (N.D. Okla. 2013) (holding, pre-*Mach Mining*, that EEOC need not identify aggrieved individuals when it gives an employer "sufficient notice of the alleged unlawful conduct").

The Court respectfully disagrees with CDR that a different rule should apply in a hostile work environment claim. CDR argues that because a hostile work environment arises from "distinct and unrelated instances of discrimination" rather than a "uniform policy," EEOC should have identified each Aggrieved Individual or at least their individual allegations. [Doc. 175 at 10–12]. But the basis of a hostile work environment claim is that instances of alleged discrimination were not "unrelated" at all, that employees endured harassment that was "pervasive or severe enough to alter the terms, conditions, or privilege of employment." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). It makes no more sense to require EEOC to inform an employer of every alleged racist or sexist comment than it would to require notice of every time a "uniform policy" operated against an employee. Demanding that EEOC produce an exhaustive catalogue of hostile acts would go beyond *Mach Mining*'s statement that notice need only describe "what the

employer has done and which employees (or class of employees) have suffered as a result." 575 U.S. at 494; *see also Geo Grp.*, 816 F.3d at 1200 (observing, in case involving hostile work environment claim, that *Mach Mining* does not "articulate any further requirement of individual conciliation prior to bringing a lawsuit on behalf of a class of individuals," and reasoning that such a requirement would "illogical[ly]" limit EEOC's "ability to seek classwide relief").

### 3.    Whether EEOC Must Identify Every Perpetrator

A corollary of these principles is that EEOC need not identify every perpetrator to give an employer adequate notice of the charges against it. When EEOC informs an employer of the alleged unlawful conduct, more detail is certainly "useful." *See Honeybaked Ham*, 918 F. Supp. 2d at 1179–80. But EEOC is not required to "lay out the factual and legal basis for all its positions," *Mach Mining*, 575 U.S. at 491 (quotation omitted), or "pursue individual conciliation on behalf of every aggrieved employee," *Geo Grp.*, 816 F.3d at 1200. *Mach Mining* and the decisions applying it make clear that so long as EEOC gives notice of "what the employer has done," it may engage in conciliation at a more general, classwide level. 575 U.S. at 494. Especially in a hostile work environment claim that may arise from smaller but "pervasive" discriminatory acts, EEOC can surely explain "what the employer has done" without naming each individual harasser. *Id.*; *cf. Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1230 (10th Cir. 2022) ("[A]n employer is liable for a claim of hostile work environment only if it knew, or should have known, about the hostile work environment and failed to respond in an appropriate manner." (quotation and emphasis omitted)). Once EEOC gives notice, the onus is on the employer to conduct its own investigation or take other steps to root out the unlawful

conduct described by EEOC.  *Cf. Mach Mining*, 575 U.S. at 494 ("EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the *employer* an opportunity to remedy the allegedly discriminatory practice." (emphasis added)); *Unit Drilling Co.*, 4 F. Supp. 3d at 1263 (holding that EEOC's notice is sufficient when it enables employer to "conduct its own investigation" to determine scope of alleged discrimination).  Imposing notice requirements beyond the baseline prescribed in *Mach Mining* would intrude on the "expansive discretion Title VII gives [EEOC] to decide how to conduct conciliation efforts."  575 U.S. at 494

Turning to EEOC's conduct in this case, the Court finds that EEOC satisfied its notice and conciliation obligations with respect to CDR.  In the "reasonable cause" determination letter, EEOC defined the discriminatory conduct at issue and explained that CDR's management was responsible for its failure to "take corrective action to eliminate the hostile work environment."  [Doc. 155-8 at 2–3].  The letter narrowed the scope of the alleged discrimination by time, location, and the classes of employees affected.  *See* [*id.* at 3]; *Unit Drilling Co.*, 4 F. Supp. 3d at 1263 (finding EEOC's pre-conciliation notice was sufficient when it specified geography, conduct, and time).  Although EEOC did not name the perpetrators, the determination letter and amended charge of discrimination identify the harassers by job title, responsibility, or other characteristics—the "General Sales Manager," "male salesmen," "internet sales manager," "the owner's son," "Used Car Manager," to name a few.  *See* [Doc. 155-5; Doc. 155-8].  The determination letter also makes clear that the discrimination was widespread, encompassing multiple "employees and managers."  [Doc. 155-8].  The Court concludes that this information was sufficient to give CDR notice of the "specific allegation" against it and afford a meaningful

opportunity during conciliation to attempt to eliminate the alleged discrimination. *See Mach Mining*, 575 U.S. at 494; *see also Geo Grp.*, 816 F.3d at 1199 (finding EEOC satisfied conciliation requirement when its determination letter detailed the complainant's allegations against one harasser but also "referred to a 'class' of female employees who had . . . been subject to discrimination, harassment, and retaliation" at two facilities).

### 4. Whether EEOC May Make a Classwide Reasonable Cause Determination

CDR argues alternatively that EEOC failed to satisfy the "reasonable cause" requirement because it failed to make a reasonable cause determination for each Aggrieved Individual. The Court respectfully disagrees. The rule that EEOC can engage in classwide conciliation without naming all Aggrieved Individuals surely extends to the "reasonable cause" stage, such that EEOC can find reasonable cause that discrimination occurred on a classwide basis without naming each individual affected. A contrary rule would effectively require EEOC to identify each Aggrieved Individual before it engages in conciliation, an outcome that this Court and numerous others have already rejected. *See, e.g.*, *W. Distrib. Co.*, 218 F. Supp. 3d at 1238; *Geo Grp.*, 816 F.3d at 1199 (approving reasonable cause determination that referred to individual discrimination against the complainant and classwide discrimination against female employees). And the same concern identified in *Geo Group*—that preventing EEOC from conducting classwide conciliation would illogically restrict EEOC's ability to seek relief on a classwide basis— applies equally to a prohibition on classwide reasonable cause determinations. *See Geo Grp.*, 816 F.3d at 1200. For these reasons, the Court finds that EEOC's classwide reasonable cause determination and conciliation efforts in this case satisfied its pre-litigation obligations. Accordingly, there is no genuine factual dispute that EEOC

exhausted the administrative prerequisites to bringing enforcement action. EEOC's Motion for Partial Summary Judgment is **GRANTED** with respect to the administrative exhaustion portion of CDR's first affirmative defense.

### B.    Statute of Limitations

EEOC next argues that summary judgment is appropriate to the extent Defendant contends that EEOC's "claims are barred by the applicable statute of limitations." [Doc. 8 at 10; Doc. 155 at 8–9]. CDR contends that summary judgment is not appropriate, among other reasons,[9] because "EEOC fails to show that any hostile work environment action occurred within the statutory time period." [Doc. 175 at 14].

Under Title VII, "the benchmark, for purposes of a statute of limitations, is . . . the commencement of the proceeding before the administrative body." *Occidental Life Ins.*, 432 U.S. at 372. In other words, Title VII "imposes no limitation" on EEOC's ability to file a lawsuit so long as the underlying charge of discrimination was initiated within the statutory deadlines. *Id.* at 366, 371–72; *see also United States v. Wyo. Mil. Dep't*, No. 16-cv-00055-SWS, 2016 WL 11469630, at *3 (D. Wyo. June 30, 2016) (collecting cases and describing the filing deadline for a charge of discrimination as an "internal statute of limitations" on EEOC enforcement actions).

_____

[9] While CDR argues that EEOC's statute of limitations argument fails for three separate reasons including that it has failed to cite evidence that would establish a hostile work environment claim and whether there is a hostile work environment is a disputed factual issue, [Doc. 175 at 14], these two arguments are inapposite because EEOC does not seek summary judgment on the merits of its hostile work environment claim. Rather, EEOC seeks summary judgment as to CDR's defense of the statute of limitations, and CDR has not independently moved for summary judgment in its favor based on the statute of limitations.

Title VII generally requires that an employee file a charge "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). If the employee initially instituted proceedings with a qualifying state or local agency, however, the filing period is extended to "three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier." *Id.* For purposes of a hostile work environment claim, "as long as 'an act' contributing to a hostile work environment took place no more than [180 or] 300 days before the plaintiff filed an EEOC charge, a court may consider the complete history of acts comprising that hostile work environment." *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1308 (10th Cir. 2005) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Although the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has not passed on the precise issue, courts within this District and the weight of authority have concluded that "discrete acts like termination" cannot be considered in determining whether a charge is timely filed, as such discrete acts cannot "form part of a hostile work environment claim," which by its "very nature involves repeated conduct." *See Nicewonder v. Ferguson Enters., LLC*, No. 22-cv-01062-CMA-KLM, 2023 WL 244830, at *5 (D. Colo. Jan. 18, 2023), *report and recommendation adopted*, 2023 WL 1466828 (D. Colo. Feb. 2, 2023) (quoting *Bobelu-Boone v. Wilkie*, 526 F. Supp. 3d 971, 981–82 (D.N.M. 2021) (collecting cases)).

While a statute of limitations is generally considered an affirmative defense, the Tenth Circuit treats "compliance with Title VII's filing deadline as a condition precedent rather than an affirmative defense." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167 (10th

Cir. 2007). Accordingly, the obligation to establish timeliness of the filing of an administrative charge is a burden that the EEOC carries ultimately and at summary judgment. *Id.* Here, Ms. Schmidt filed her first charge of discrimination on March 8, 2019. *See* [Doc. 155-2]. EEOC argues that the timeliness of Ms. Schmidt's charge is undisputed, because Ms. Schmidt alleged a discriminatory act that occurred in August 2018, well within 300 days of the charge. [Doc. 181 at 9]. But CDR does, in fact, challenge whether EEOC has shown that any hostile work environment action occurred within the statutory period. *See* [Doc. 175 at 14]. And Title VII only applies a 300-day filing period when the aggrieved individual "initially instituted proceedings with a State or local agency" before filing a charge with EEOC. § 2000e-5(e)(1). Despite its assurances that a 300-day filing period applies, [Doc. 155 at 8], EEOC has not pointed to sufficient evidence in the summary judgment record to establish that Ms. Schmidt instituted proceedings with a state or local agency. If she only filed a charge with EEOC, the default 180-day filing period would apply, and the August 2018 incident could not form the basis for a timely charge of discrimination. *See* § 2000e-5(e)(1).

EEOC's alternative arguments also fail. For the reasons explained in *Nicewonder*, 2023 WL 244830, at *5, Ms. Schmidt's January 2019 termination cannot constitute an "act contributing to the [hostile work environment] claim," *Morgan*, 536 U.S. at 117. And while EEOC and Ms. Schmidt allege a workplace that was "permeated" with discriminatory conduct, the Court will not assume that "each day Ms. Schmidt worked for Defendant" constitutes a discriminatory act. [Doc. 155 at 9]. *Morgan* is clear that there must be at least one discriminatory "act" that occurs within the filing period for the charge to be timely. 536 U.S. at 117.

Finally, EEOC correctly points out that courts "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007), *overruled in part on other grounds*, *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185–86 (10th Cir. 2018). But EEOC identifies no authority that extends this principle to the evaluation of timeliness. *See Jones*, 502 F.3d at 1186 (observing that an individual plaintiff's claim "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC" (quotation omitted)); *EEOC v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1263 (D. Colo. 2007) ("[T]he original charge is sufficient to support EEOC administrative action, as well as an EEOC civil suit, for any discrimination stated in the charge itself or discovered in the course of a reasonable investigation of that charge." (quoting *EEOC v. Hearst Corp.,* 553 F.2d 579, 580 (9th Cir. 1976)). Even if those decisions did apply, EEOC does not adduce evidence of another sufficient "act" not listed in the charge that occurred within 180 days of Ms. Schmidt's original charge. *See* [Doc. 181 at 9].

The EEOC has failed to show that there are no genuine issues of material fact regarding Defendant's statute of limitations defense, so the Motion for Partial Summary Judgment is respectfully **DENIED** as to the statute of limitations portion of CDR's first defense.

### C.    Mitigation of Damages

CDR's second affirmative defense provides that Aggrieved Individuals have not "taken reasonable steps to mitigate any damages." [Doc. 8 at 10]. EEOC argues that this defense fails as a matter of law because a mitigation defense is only available against

a backpay claim, and because CDR cannot establish a genuine factual issue as to the
viability of a mitigation defense against the lone backpay claim in this case.  [Doc. 155 at
11–13].

*Mitigation in General.*   As an initial matter, the Court agrees with EEOC that a
mitigation of damages defense is available only when the lawsuit seeks backpay.  *See
United States v. Regents of N.M. State Univ.*, No. 16-cv-00911-JAP-LF, 2018 WL
4760664, at *3 (D.N.M. Oct. 1, 2018); *see also Castagna v. Luceno*, 558 F. App'x 19, 22
(2d Cir. 2014) (observing that § 2000e-5(g)(1) "provide[s] that 'back pay,' but not other
forms of relief," is subject to mitigation of damages, so a failure to mitigate "would not by
itself bar . . . recovery of compensatory damages"); *EEOC v. Fred Meyer Stores, Inc.*,
954 F. Supp. 2d 1104, 1128 (D. Ore. 2013) ("If Congress intended there to be a duty to
mitigate all compensatory damages, it is illogical that it chose to single out the duty to
mitigate back pay alone.").  *But see EEOC v. SDI of Mineola, Tex., LLC*, 631 F. Supp. 3d
418, 421 (E.D. Tex. 2022) (concluding that "Congress's inclusion of the mitigation defense
to an award of back pay authorized in the [Civil Rights Act of 1964] could not implicitly
preclude that defense to a different remedy that did not exist at the time," because
Congress did not authorize awards of "compensatory and punitive damages" until 1991).

The Court respectfully declines CDR's invitation to adopt the minority position set
forth in *Mineola.*  Congress authorized a mitigation defense to backpay awards, but not
compensatory damages awards.   And in the statute providing for compensatory
damages, Congress specifically carved out "backpay" and "any other relief authorized
under" § 2000e-5 from compensatory damages awards.  *See* 42 U.S.C. § 1981a(b)(2).
The Court therefore concurs that if Congress intended to apply § 2000e-5's mitigation

defense to all compensatory damages awards, it would have done so expressly. *See Fred Meyer Stores*, 954 F. Supp. 2d at 1128. The Motion for Partial Summary Judgment is **GRANTED** to the extent CDR attempts to assert a mitigation defense against the Aggrieved Individuals who do not seek backpay.

*Mitigation by Ms. Guerra.* EEOC next argues that CDR has failed to establish a genuine issue of fact as to its mitigation defense against the claim of backpay for Jaime Guerra, the only Aggrieved Individual seeking backpay. To establish a mitigation defense against Ms. Guerra's backpay claim, CDR bears the burden of establishing (1) "that there were suitable positions available which [Ms. Guerra] could have discovered and for which [she] was qualified"; and (2) that Ms. Guerra "failed to use reasonable care and diligence in seeking such a position." *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000) (quotation omitted). To carry its burden, Defendant must prove both prongs of this two-part test. *See Aguinaga v. United Food & Comm. Workers Int'l Union*, 993 F.2d 1463, 1474 (10th Cir. 1993). "If the employer fails to satisfy the first prong, *i.e.*, that there were suitable positions available, then the individual mitigation efforts of the claimant are 'simply irrelevant.'" *Carrasco v. Centura Health Corp.*, No. 19-cv-00357-LTB-KMT, 2021 WL 4913983, at *2 (D. Colo. June 18, 2021) (quoting *Aguinaga*, 993 F.3d at 1474).

Although CDR has offered evidence that Ms. Guerra's "job search was unreasonable," it fails to demonstrate a genuine issue of fact as to whether suitable positions were available. [Doc. 175 at 15–16]. CDR points to one job interview that Ms. Guerra cancelled but offers no proof that the job was suitable or that Ms. Guerra was qualified for the position. [*Id.* at 16; Doc. 175-1]. And CDR's conclusory assertion that

Ms. Guerra's work as a Lyft driver was "suitable employment" does not suffice to meet CDR's burden at summary judgment.[10]  *See Bones*, 366 F.3d at 875.  For a job to be "suitable," it must be "substantially similar" and "afford virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as a claimant's prior position."  *Carrasco*, 2021 WL 4913983, at *4 (cleaned up) (collecting cases).  CDR has offered no evidence that the cancelled job interview or driving for Lyft would have led to "suitable" employment for Ms. Guerra.  Accordingly, the Court concludes that CDR fails to meet its burden that suitable positions were available for Ms. Guerra.  *EEOC v. Kanbar Prop. Mgmt.*, No. 12-cv-00422-JED-TLW, 2013 WL 4512671, at *5 (N.D. Okla. Aug. 23, 2013) (granting summary judgment to EEOC on mitigation defense when employer provided no evidence that suitable positions were available).  EEOC's Motion for Partial Summary Judgment is therefore **GRANTED** with respect to CDR's mitigation defense.

### D.    After-Acquired Evidence

The Parties agree on the proper scope of CDR's after-acquired evidence defense.

> The doctrine of after-acquired evidence creates an affirmative defense that allows an employer to avoid liability for frontpay and some backpay damages if it shows that it discovered, mid-litigation, that a plaintiff engaged in heretofore unknown misconduct during his or her employment that would have warranted the employee's termination had that conduct been known to the employer during the employment.

---

[10] CDR also claims that there is "other evidence of suitable employment positions in the record."  [Doc. 175 at 2 ¶ 26]; *see also* [Doc. 155-10 at 3–4; Doc. 155-13 at 74:20–75:7].  But it offers no support for the conclusory assertion that any position Ms. Guerra obtained through Elwood Staffing Agency and Apple One Employment Services would have been suitable.

*Oldershaw v. DaVita Healthcare Partners, Inc.*, No. 17-cv-00131-MSK-MJW, 2018 WL
3648059, at *19 (D. Colo. Aug. 1, 2018) (citing *McKennon v. Nashville Banner Publ'g Co.*,
513 U.S. 352, 361–62 (1995)).  CDR concedes that the defense is inapplicable to the
Aggrieved Individuals other than Ms. Guerra, because Ms. Guerra is the only Aggrieved
Individual with a wrongful termination claim.  [Doc. 175 at 16]; *see also, e.g.*, *Oldershaw*,
2018 WL 3648059, at *19 (finding after-acquired evidence defense moot when court had
already granted summary judgment against termination-related claims).

EEOC, for its part, concedes that CDR "narrowly avoids summary judgment" based
on an affidavit from a CDR manager.  [Doc. 181 at 14 n.5]; *see also* [Doc. 175-6].  In the
affidavit, the manager avers that CDR learned after Ms. Guera's termination that she
would sleep during her shifts, and that CDR would have terminated her immediately had
it known of her conduct.  [Doc. 175-6 at ¶¶ 6–7].  The Court agrees that factual issues
persist as to whether Ms. Guerra would sleep on the clock and, if so, whether "the
wrongdoing was of such severity that the employee in fact would have been terminated
on those grounds alone."  *McKennon*, 513 U.S. at 362–63; *see also* [Doc. 155 at ¶¶ 29–
38; Doc. 175 at 3 ¶¶ 29–38].  Accordingly, the Motion for Partial Summary Judgment is
respectfully **GRANTED** to the extent CDR asserts an after-acquired evidence defense
against any claim other than Ms. Guerra's, and **DENIED** as to Ms. Guerra's alleged
wrongful discharge.

### E.    Laches

CDR's sixth affirmative defense asserts that EEOC's claims are barred by the
doctrine of laches.  [Doc. 8 at 11].  "The defense of laches is an equitable defense 'which
bars a plaintiff from maintaining a suit if [it] unreasonably delays in filing a suit and as a

result harms the defendant.'"  *EEOC v. Beverage Distribs. Co.*, No. 11-cv-02557-CMA-CBS, 2012 WL 6547782, at *3 (D. Colo. Dec. 14, 2012) (quoting *Morgan*, 536 U.S. at 121).  A laches defense "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."  *Morgan*, 536 U.S. at 121–22.  Because CDR will bear the burden of proving the affirmative defense at trial, EEOC need only identify one element where no genuine issue of fact remains as to CDR's failure to establish the element.  *See EEOC v. Jetstream Ground Servs.*, 134 F. Supp. 3d 1298, 1332 (D. Colo. 2015).

The Court begins with the second element and considers whether CDR has established prejudice from EEOC's alleged delay.  "Conclusory allegations of prejudice, including allegations that witnesses have faded memories from the passage of time, are 'insufficient to establish material prejudice.'"  *Id.* (quoting *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1208 (10th Cir. 2001)).  The prejudice must also be attributable to EEOC's delay.  *Id.*

CDR contends that it has offered non-conclusory allegations that it was prejudiced by the two-and-a-half-year gap between Ms. Schmidt's initial charge and EEOC's filing of this suit.  Specifically, CDR asserts prejudice based on some Aggrieved Individuals' inability to remember certain facts during their depositions.  *See* [Doc. 175 at 18–19].  But three of the five forgotten facts are immaterial to the claims at issue:  the fate of one Aggrieved Individual's workplace vacuum cleaner, whether another Aggrieved Individual told coworkers of his plans to move to Idaho, and whether Aggrieved Individual Alaina Roybal ("Ms. Roybal") received an employee handbook containing attendance policies.  *See* [Doc. 175 at 19].  CDR fails to explain how these facts relate to whether employees

at CDR experienced a hostile work environment.  Any prejudice arising from those lapses in memory is merely conclusory.  *See Rodriguez-Aguirre*, 264 F.3d at 1208.

The Court agrees that the other facts identified may have some bearing on the merits of EEOC's claims.  First, Ms. Roybal's tardiness could be relevant as an alternative explanation for CDR managers' discouraging her from applying for a sales position.  [Doc. 175 at 19].  Second, Ms. Guerra's sleeping on the job is relevant to the after-acquired evidence defense.  [*Id.* at 18–19].

CDR has not demonstrated, however, that it has suffered material prejudice from Ms. Roybal's and Ms. Guerra's inability or unwillingness to remember whether they engaged in workplace misconduct.  For Ms. Guerra in particular, CDR has already provided some evidence that she would nap during her shifts.  *See* [Doc. 175 at 3 ¶¶ 30–31; Doc. 175-4 at 2; Doc. 174-6].  As EEOC points out, CDR does not argue that Ms. Roybal and Ms. Guerra would have remembered their alleged misconduct when EEOC's investigation began.  [Doc. 181 at 12]; *see United States v. Regents of N.M. State Univ.*, No. 16-cv-00911-JAP-LF, 2018 WL 941702, at *7 (D.N.M. Feb. 16, 2018) (finding no prejudice when defendants had not "provided any evidence that details now forgotten would have been recalled" when enforcement action began).  Nor does CDR suggest that its own witnesses have forgotten facts regarding Ms. Roybal's and Ms. Guerra's conduct during their employment.  In sum, the Court finds that CDR fails to present non-conclusory allegations that the witnesses' faded memories have materially prejudiced CDR, let alone that their forgetfulness is attributable to EEOC's delay.  Because there is no genuine dispute of fact as to an essential element of CDR's laches defense, EEOC is entitled to summary judgment, and the Court need not consider whether EEOC unreasonably

delayed in bringing this lawsuit.  The Motion for Partial Summary Judgment is respectfully **GRANTED** as to CDR's laches defense.

### F.    Real Party in Interest

CDR's eleventh affirmative defense states that EEOC "is not a real party in interest with regard to all of the claimed damages and losses."  [Doc. 8 at 12].  This defense implicitly invokes Rule 17, which requires that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  But Rule 17 also lists "a party authorized by statute" as one that "may sue in [its] own name[] without joining the person for whose benefit the action is brought."  Fed. R. Civ. P. 17(a)(1)(G).  As discussed above, § 706 of the Civil Rights Act of 1964 authorizes EEOC to bring enforcement actions, both for the benefit of aggrieved individuals and for EEOC's own purposes in addressing workplace discrimination.  *See* 42 U.S.C. § 2000e-5; *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 324 (1980) ("Given the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals.").  Under Rule 17, then, when EEOC sues pursuant to its statutory authority, it acts as a real party in interest and more than a mere "proxy for the employee."  *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 298 (2002); *cf. Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974) (finding that when Secretary of Labor brings FLSA enforcement action, the Secretary is the real party in interest, not the aggrieved employees, even though the employees "remain the statutory beneficiaries of any back pay awards").  CDR's eleventh affirmative defense therefore fails as a matter of law.

This conclusion does not leave CDR unprotected from double recovery if an Aggrieved Individual seeks to intervene. The Supreme Court has advised that when EEOC sues for an employee's benefit, it "goes without saying that the courts can and should preclude double recovery by an individual." *Waffle House*, 534 U.S. at 297 (quoting *Gen. Tel. Co.*, 446 U.S. at 333); *see also Gen. Tel. Co.*, 446 U.S. at 333 ("The Title VII remedy is an equitable one; a court of equity should adjust the relief accordingly."). If this case develops in a way that creates a risk of double recovery, CDR may raise its concerns at that time. But the Court need not preserve an inapplicable Rule 17 defense to prevent double recovery. The Motion for Partial Summary Judgment is respectfully **GRANTED** as to CDR's real party in interest defense.

### G.    Collateral Sources

CDR's twelfth affirmative defense states that "Defendant is entitled to a reduction of a damage award, if any, to the extent of any payment made to the Plaintiff from a collateral source." [Doc. 8 at 12]. EEOC argues that this defense "flips the rule on its head," because collateral sources cannot be used to reduce a benefits award. [Doc. 181 at 13]; *see also* [Doc. 155 at 19]. EEOC further argues that no genuine factual dispute remains as to whether subsequent wages should be deducted from Ms. Guerra's backpay award. [Doc. 155 at 19–20].

"Generally, monies received from sources other than the employer are considered collateral benefits that may not be used to offset an award of backpay." *Marsh v. Coleman Co.*, 806 F. Supp. 1505, 1508 (D. Kan. 1992) (citing *EEOC v. Sandia Corp.*, 639 F.2d 600, 626 (10th Cir. 1980)); *see also Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 358 (5th Cir. 2016) ("[The collateral source] rule asks whether the tortfeasor contributed to, or

was otherwise responsible for, a particular income source."). When an employee seeks backpay in a wrongful discharge claim, however, "earnings" from subsequent wages are not considered collateral sources; the backpay may be offset by the employee's wages from other employment during the backpay period. *See NLRB v. Gullett Gin Co.*, 340 U.S. 361, 363 (1951); 42 U.S.C. § 2000e-5(g)(1) ("Interim earnings . . . by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."). To the extent CDR's collateral sources defense argues that a damages award should be reduced by payments "from a collateral source," CDR has inverted the collateral sources doctrine. The Motion for Partial Summary Judgment is therefore **GRANTED** insofar as CDR seeks a damages reduction for collateral benefits. Going forward, CDR may still identify non-collateral benefits that it believes should be deducted from a damages award.

It is unclear what other relief EEOC requests with respect to CDR's collateral sources defense. The Parties agree that Ms. Guerra's backpay award, should she prevail, will be offset by her subsequent earnings. [Doc. 155 at 19–20; Doc. 175 at 21]. As CDR points out, other non-collateral payments—such as severance—may also be deducted from a backpay award, though CDR points to no evidence that any such payments exist. [Doc. 175 at 21]. And the Parties agree that the Court need not undertake any damage calculations at this time. [*Id.*; Doc. 181 at 14].[11] Having set out

---

[11] CDR asserts that "the amount of offset for [Ms.] Guerra's backpay claim is a factual issue that must be decided at trial." [Doc. 175 at 21]. But "[b]ackpay is viewed as equitable relief in a Title VII case to be decided by the judge." *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1047 (10th Cir. 2021) (citations omitted). Both parties must consent for a backpay calculation to be decided by the jury, although it is "common practice" to do so. *See id.* (citations omitted). CDR has requested a jury trial on "all issues so triable,"

the principles of the collateral source doctrine, the Court sees no other issues to resolve with respect to this defense.  The Motion for Partial Summary Judgment is respectfully **DENIED** to the extent EEOC seeks any other relief against this defense.

### Motion for Partial Judgment on the Pleadings

### I.    Legal Standard

As an initial matter, the Court must decide the appropriate standard of review to apply to EEOC's Motion for Partial Judgment on the Pleadings.  Rule 12(c) of the Federal Rules of Civil Procedure permits a motion for judgment on the pleadings "[a]fter the pleadings are closed."  "[T]he Rule 12(c) judgment on the pleadings procedure primarily is addressed to the . . . function of disposing of cases on the basis of the underlying substantive merits of the parties' claims and defenses as they are revealed in the formal pleadings."  5C Charles Alan Wright et al., *Federal Practice & Procedure* § 1367 (3d ed. June 2024 update).  When a party wishes to "challenge the pleading of a defense," a motion to strike under Rule 12(f) is ordinarily the "proper vehicle" to do so.  *See Cribari v. Allstate Fire & Cas. Ins. Co.*, 861 F. App'x 693, 705 (10th Cir. 2021).  Nevertheless, Rule 12(h)(2) allows for a Rule 12(c) motion to assert a party's "[f]ailure . . . to state a legal defense to a claim."  Fed. R. Civ. P. 12(h)(2)(B).  "The mere fact that . . . procedural defects are raised in the guise of a Rule 12(c) motion should not affect the manner by which the court determines an issue" ordinarily decided using a different procedural vehicle.  *See* Charles Alan Wright et al., *supra*, § 1367.

---

[Doc. 8 at 14 (emphasis omitted)], but there is no indication that EEOC has consented to a jury calculating Ms. Guerra's backpay award.  *See generally* [Doc. 1].

Yet it is unclear whether precisely the same scope of relief is available in both Rule 12(f) and Rule 12(h)(2) motions. Rule 12(f) permits a motion to strike an "insufficient" defense, whereas Rule 12(h)(2) allows a party to assert the failure to "state a legal defense." *Compare* Fed. R. Civ. P. 12(f), *with* Fed. R. Civ. P. 12(h)(2). Moreover, Rule 12(f)(2) requires a party to file a motion to strike within 21 days after being served with the pleading, while a Rule 12(c) motion must only be filed "early enough not to delay trial." *See* Fed. R. Civ. P. 12(c), (f)(2). If the two standards were entirely equivalent, Rule 12(f)(2)'s 21-day deadline would be left meaningless. In light of these differences, at least two courts have concluded that a Rule 12(h)(2) motion allows for a narrower range of challenges than a Rule 12(f) motion:

> [T]he difference between an "insufficient defense" and the failure to "state a legal defense to a claim" is based on the *type* of challenge being made. A claim of an "insufficient defense" covers a broader array of possible challenges than one claiming failure to state a "legal defense." In fact, while every failure to state a "legal defense" would also likely be an "insufficient defense," the reverse isn't true—some defenses can be insufficient but still state a legal defense. This follows from the definition of "legal defense" as "a complete and adequate defense in a court of law." *See* Black's Law Dictionary (10th ed. 2014). If a defense is not a complete and adequate one, it is not a legal defense. So, for example, if an affirmative defense of laches is not available as a matter of law in a particular case, then the plaintiff could move under Rule 12(h)(2)(B) (via Rule 12(c)) for judgment on the pleadings as to that defense.

*Jou v. Adalian*, No. 15-cv-00155-JMS-KJM, 2017 WL 3624340, at *3 (D. Haw. Aug. 23, 2017); *see also Katzkin Leather, Inc. v. Roadwire, LLC*, No. 20-cv-02093-DSF-JEMx, 2021 WL 4704722, at *3 (C.D. Cal. Jan. 21, 2021) (applying *Jou* to Rule 12(h)(2) motion). This Court finds *Jou* persuasive and concludes that a Rule 12(h)(2) motion may challenge whether a defendant has asserted an applicable and adequate legal defense, but not the sufficiency of a defendant's pleading.

Although Plaintiff does not present it as such, the Motion for Partial Judgment on the Pleadings is effectively a belated motion to strike brought pursuant to Rule 12(h)(2) rather than an ordinary Rule 12(c) motion.  Plaintiff asserts that the challenged affirmative defenses are either inadequately pled, legally inapplicable to Plaintiff's claims, or denials of the merits of Plaintiff's claims that CDR mislabeled as affirmative defenses.  *See generally* [Doc. 156].  These are the sorts of arguments raised in a motion to strike.  *See, e.g.*, *Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1169–71 (D. Colo. 2014) (striking affirmative defenses that were insufficiently pled, legally inapplicable, or denials mislabeled as affirmative defenses).  Unsurprisingly, much of the case law cited by Plaintiff was decided in the motion to strike context, under the Rule 12(f) standard.  *See, e.g.*, [Doc. 156 at 6, 8–9, 12–14].  And in its Reply, Plaintiff outright argues that the Court "can and should <u>strike</u> Defendant's alleged defenses that are merely denials of the EEOC's *prima facie* case."  [Doc. 176 at 4 (emphasis added)].  Upon review of the Motion for Partial Judgment on the Pleadings, the Court construes it as a Rule 12(h)(2) motion. The Court therefore applies the standard set forth in *Jou*, not the Rule 12(b)(6) standard urged by the Parties.  [Doc. 156 at 2; Doc. 173 at 1–2]; *see also Jou*, 2017 WL 3624340, at *4 (construing motion for judgment on the pleadings as motion to strike when the motion contended that several affirmative defenses were insufficiently pled).[12]

---

[12] In the Rule 12(f) context, courts have recognized that overzealous policing of misplead affirmative defenses creates a dilemma when a defendant is unsure whether an argument constitutes an affirmative defense:  err on the side of pleading the defense and face a motion to strike, or omit the defense and run the risk of waiver.  *See Sender v. Mann*, 423 F. Supp. 2d 1155, 1163 (D. Colo. 2006).  This Court does not consider whether it wields the same discretion to deny a Rule 12(h)(2) motion as it does a Rule 12(f) motion.  *See Martinez v. Naranjo*, 328 F.R.D. 581, 591 (D.N.M. 2018) (observing that courts often deny motions to strike that are "purely cosmetic" (quotation omitted)).  But Rule 12(h)(2), like any procedural rule, "should be construed, administered, and employed by the court and

## II.    Analysis

### A.    Denials Mislabeled as Affirmative Defenses

EEOC requests a judgment on the pleadings against CDR's affirmative defenses that it characterizes as mere denials of the merits of EEOC's claims.  [Doc. 156 at 3–9].  These defenses include (1) the portion of CDR's first affirmative defense that asserts EEOC has "failed to state a claim," *see* [Doc. 8 at 10]; (2) the portion of CDR's fifth affirmative defense that states "[a]ll personnel actions affecting [Aggrieved Individuals] were based on legitimate, non-discriminatory reasons," *see* [*id.* at 11]; and (3) CDR's fifteenth affirmative defense, which states that Defendant's conduct did not proximately cause the claimed damages, *see* [*id.* at 13].  *See generally* [Doc. 156 at 3–9].  EEOC may well be correct that these are not affirmative defenses.  But that does not mean these arguments are not "legal defenses" for purposes of Rule 12(h)(2).  *Compare Legal Defense*, Black's Law Dictionary (12th ed. 2024) ("A complete and adequate defense in a court of law."), *with Affirmative Defense*, Black's Law Dictionary (12th ed. 2024) ("A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true.").  For instance, if CDR were to demonstrate at trial that it acted without a discriminatory motive in terminating Ms. Guerra, that would be a "complete and adequate defense" to liability on the retaliatory discharge claim.  *See Jou*, 2017 WL 3624340, at *3.  Because these defenses are "legal defenses" to the merits of EEOC's claims, and because the Court will not assess the sufficiency of

---

the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  The Court is puzzled why EEOC would file a belated motion to raise technical arguments that will not eliminate issues at trial or otherwise move the case forward.  Nevertheless, this Court proceeds to consider its merits.

CDR's pleading under Rule 12(h)(2), the Motion for Partial Judgment on the Pleadings is respectfully **DENIED** with respect to CDR's first affirmative defense, fifteenth affirmative defense, and the "non-discriminatory motive" portion of CDR's fifth affirmative defense.

### B.    Insufficient Pleading of a Statute of Limitations Defense

CDR's first affirmative defense states in relevant part that EEOC's claims are "barred by the applicable statute of limitations." [Doc. 8 at 10]. EEOC contends that no statute of limitations applies to its Title VII enforcement actions. [Doc. 156 at 5–6]. But as the Court described above, Title VII's deadline for filing a charge of discrimination functions as an "internal statute of limitations" on EEOC enforcement actions. *See Wyo. Mil. Dep't*, 2016 WL 11469630, at *3. EEOC asserts that CDR "failed to identify a specific statute of limitations in its Answer and pleaded no facts related to this defense." [Doc. 156 at 5–6]. Those arguments would be appropriately raised in a Rule 12(f) motion to strike, where the Court could assess whether CDR's pleading of a statute of limitations is "insufficient" under Rule 12(f) and Rule 8. *See Michaud v. Greenberg & Sada, P.C.*, No. 11-cv-01015-RPM-MEH, 2011 WL 2885952, at *2–4 (D. Colo. July 18, 2011) (explaining Rule 8 pleading standard for affirmative defenses). Under Rule 12(h)(2), however, the Court will not probe the sufficiency of CDR's pleading. *See Jou*, 2017 WL 3624340, at *3. The Motion for Judgment on the Pleadings is thus **DENIED** with respect to CDR's statute of limitations defense.

### C.    Remedies Issues

EEOC next seeks judgment on the pleadings against several affirmative defenses that are not "legal defenses" but may be considered at the remedies stage.  The Court considers each of these defenses in turn.

#### 1.    Same Action Absent Discriminatory Motive

CDR's fifth affirmative defense claims that "Defendant would have taken the same personnel actions despite any proven discriminatory motive."  [Doc. 8 at 11].  Under Title VII, a showing that the employer "would have taken the same action in the absence of the impermissible motivating factor" will limit the remedies available but does not prevent liability.  42 U.S.C. § 2000e-5(g)(2)(B) (prohibiting district court from awarding damages or ordering reinstatement or promotion when employer makes such a showing, but permitting declaratory and injunctive relief); *see also Burnett v. Sw. Bell Tel., L.P.*, 471 F. Supp. 2d 1121, 1138 n.25 (D. Kan. 2007) ("[Section 2000e-5(g)(2)(B)] merely restricts plaintiff's remedies—as opposed to absolving liability altogether—if defendant shows that it would have taken the same action absent the unlawful motive.").  The Court therefore finds that this affirmative defense is not a "legal defense" under Rule 12(h)(2).  *See Jou*, 2017 WL 3624340, at *3.

The Court respectfully disagrees with CDR that the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), should alter this Court's reading of § 2000e-5(g)(2)(B), *see* [Doc. 173 at 9].  *Bostock* reiterated that Title VII incorporates the traditional but-for causation standard.  590 U.S. at 656.  But-for causation is established "whenever a particular outcome would not have happened 'but for' the purported cause." *Id.*  CDR understands this definition as suggesting that when a personnel action would

"have happened in the absence of discrimination, there is no causation." [Doc. 173 at 9].
But *Bostock* explicitly clarifies that an event may have "multiple but-for causes" that
equally cause the harm. 590 U.S. at 656. That means "a defendant cannot avoid liability
just by citing some *other* factor that contributed to its challenged employment decision."
*Id.* (emphasizing that the challenged conduct need not occur "solely," or even "primarily,"
because of a discriminatory motive). More importantly, "but-for causation" is no longer
the "exclusive[] path to relief under Title VII," because Congress has provided for liability
even when discrimination is merely a "motivating factor" rather than a necessary, but-for
cause of a challenged employment action. *Id.* at 657 (citing 42 U.S.C. § 2000e-2(a)(1)).
Of course, CDR may argue at trial that there was no discriminatory motive at all, or that
the motive was not a but-for cause of its personnel actions. But a showing that CDR
would have taken the same actions absent a discriminatory motive is not a "legal defense"
under § 2000e-5(g)(2)(B) or *Bostock*. The Motion for Partial Judgment on the Pleadings
is respectfully **GRANTED** as to this portion of CBR's fifth affirmative defense.

### 2. Unclean Hands

CDR's sixth affirmative defense invokes the doctrine of unclean hands. [Doc. 8 at
11]. The Parties agree that unclean hands is unavailable as a defense to liability but may
be considered at the remedies stage. [Doc. 156 at 9; Doc. 173 at 10–11; Doc. 176 at 6–
7]. The Supreme Court has "rejected the unclean hands defense where a private suit
serves important public purposes." *McKennon*, 513 U.S. at 360 (quotation omitted)
(rejecting unclean hands as a liability defense in age discrimination cases and describing
the Age Discrimination in Employment act as comparable to Title VII). Nevertheless,
*McKennon* recognizes that an employee's misconduct may be relevant at the remedies

stage in order to "take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing." *Id.* at 361. While CDR may assert unclean hands at the remedies stage, the Court concludes that unclean hands is not a "legal defense" in this Title VII action. *See McFadden v. Meeker Hous. Auth.*, No. 16-cv-02304-WJM-GPG, 2018 WL 3368411, at *3 & n.1 (D. Colo. July 10, 2018) (striking unclean hands as an affirmative defense but noting that "*McKennon* permits consideration of unclean hands as part of fashioning an appropriate remedy, particularly any prospective remedy"). The Motion for Judgment on the Pleadings is respectfully **GRANTED** only to the extent CDR seeks to assert unclean hands as a defense to liability.[13]

### 3.    At-Will Employees

CDR's ninth affirmative defense provides that EEOC's claims are "barred by the at-will employment doctrine." [Doc. 8 at 12]. EEOC argues that Aggrieved Individuals' at-will status is not a defense to a Title VII claim, because "[a]n employer cannot terminate an at-will employee for a discriminatory purpose." [Doc. 156 at 11 (citing *Perry v. Woodward*, 199 F.3d 1126, 1133 (10th Cir. 1999))]. CDR counters that at-will status might be relevant to a § 2000e-5(g)(2)(B) defense because "CDR does not need to show good cause, employee wrongdoing, or some other reason for termination" of an at-will employee. [Doc. 173 at 12]. The Court is skeptical that at-will status could support a showing that an employer would have terminated an employee absent a discriminatory motive. The fact that an employer could have terminated an at-will employee at *any* time

---

[13] EEOC also argues that CDR fails to adequately plead unclean hands. [Doc. 156 at 10]. That argument falls outside the scope of the Court's review under Rule 12(h)(2), and the Court need not consider it. *See Jou*, 2017 WL 3624340, at *3.

hardly demonstrates that an employer would have terminated the employee at a *specific* time regardless of a proven discriminatory motive. For now, though, the Court need not decide this question. Even if at-will status permits an employer to invoke § 2000e-5(g)(2)(B), that provision is not a "legal defense." The Motion for Partial Judgment on the Pleadings is therefore **GRANTED** as to CDR's ninth affirmative defense, although CDR may still raise Aggrieved Individuals' at-will status if it argues that it would have taken particular personnel actions absent a discriminatory motive.

### 4.     Attorney's Fees

CDR's nineteenth affirmative defense states that EEOC's claims are "frivolous, vexatious, unreasonable, and/or are filed in bad faith, and for that reason justify an award of attorney's fees and litigation costs against Plaintiff in favor of Defendant." [Doc. 8 at 14]. Title VII allows the Court to award attorney's fees to prevailing parties other than the EEOC or the United States. § 20003-5(k); *see also Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (limiting attorney's fees awards under Title VII to cases where the plaintiff's action was "frivolous, unreasonable, or without foundation"). But CDR's preliminary request for attorney's fees is plainly not a "legal defense." Should CDR prevail in this case, it may request a fees award in a timely motion. Accordingly, the Motion for Partial Judgment on the Pleadings is **GRANTED** as to CDR's nineteenth affirmative defense.

### D.     Comparative Fault

CDR's fourteenth affirmative defense states that EEOC's damages are "barred or diminished" in accordance with Colorado's comparative fault statute. [Doc. 8 at 13]; Colo. Rev. Stat. § 13-21-111.5 (2024). This defense fails for two reasons. First, Colorado's

comparative fault rules do not operate as a defense to liability. They merely reduce a defendant's damages proportionally to the defendant's "degree or percentage" of fault. *See* Colo. Rev. Stat. § 13-21-111.5; *see also United States v. Ridley's Fam. Mkts., Inc.*, No. 20-cv-00173-TS-JCB, 2025 WL 252702, at *2 & n.14 (D. Utah Jan. 21, 2025) ("Comparative fault is not an affirmative defense to liability . . . but [is] rather a theory for the apportionment of damages if liability is found." (quoting *United States v. Hubenka*, No. 10-cv-00093-ABJ, 2012 WL 12792144, at *3 (D. Wyo. Jan. 20, 2012)).

Second, courts in this District generally do not apply Colorado's comparative fault rules to federal claims. *See Fourhorn v. City & Cnty. of Denver,* No. 08-cv-01693-MSK-KLM, 2008 WL 5423349, at *3 (D. Colo. Dec. 30, 2008) ("Section 13-21-111.5 is not applicable to diminish a part[y's] liability for federal law claims."). CDR does not explain why the Court should depart from that rule to apply § 13-21-111.5 to EEOC's Title VII claims. *See Cowen v. WD Equip., LLC*, No. 21-cv-03133-GPG, 2023 WL 8818119, at *13 (D. Colo. Nov. 8, 2023) (declining to apply § 13-21-111.5 when party asserting comparative fault "did not make a coherent, developed argument" for doing so). It appears CDR believes a general, federal version of comparative fault should apply at the damages stage to account for Aggrieved Individuals' misconduct. *See* [Doc. 173 at 12–14 (citing *Doe v. Oberweis Dairy*, 456 F.3d 704, 714 (7th Cir. 2006))]. But the Court need not address that argument to resolve the viability of a defense that expressly—and exclusively—invokes Colorado's comparative fault statute. *See* [Doc. 8 at 13]. Because § 13-21-111.5 neither creates a legal defense nor applies to EEOC's claims, the Motion for Partial Judgment on the Pleadings is respectfully **GRANTED** as to CDR's fourteenth affirmative defense.

### E.    Reservation of Right to Amend or Bring Counterclaims

Defendant's twentieth affirmative defense reserves its right to add additional defenses or bring counterclaims. [Doc. 8 at 14]. This is not a "legal defense." *See A1 Garage Door Serv., LLC v. West*, No. 21-cv-01821-PAB-NRN, 2022 WL 952874, at *8 (D. Colo. Mar. 30, 2022) (finding that a "reservation of future affirmative defenses" is not an affirmative defense). If CDR seeks leave to amend, it may do so in a motion. There is no indication, however, that CDR intends to add affirmative defenses or counterclaims to its Answer, and the deadline for amendment expired nearly three years ago. *See* [Doc. 16 at 14]. The Court therefore need not consider EEOC's arguments with respect to the applicability of various hypothetical counterclaims. *See* [Doc. 156 at 14–15]. The Motion for Judgment on the Pleadings is therefore **GRANTED** with respect to CDR's twentieth affirmative defense.

### CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    Plaintiff EEOC's Motion for Partial Summary Judgment [Doc. 155] is **GRANTED in part** and **DENIED in part**;

(2)    Plaintiff EEOC's Motion for Partial Judgment on the Pleadings [Doc. 156] is **GRANTED in part** and **DENIED in part**;

(3)    The Motion for Partial Summary Judgment is **GRANTED** with respect to CDR's second, sixth, eleventh, and twelfth affirmative defenses, and the administrative exhaustion portion of CDR's first affirmative defense;

(4)   The Motion for Partial Summary Judgment is **DENIED** with respect to CDR's third affirmative defense and the statute of limitations portion of CDR's first affirmative defense;

(5)   The Motion for Partial Summary Judgment is **DENIED** to the extent CDR's third affirmative defense asserts an after-acquired evidence defense against Ms. Guerra's alleged wrongful discharge claim, and **GRANTED** to the extent CDR asserts an after-acquired evidence defense against any other claim;

(6)   The Motion for Partial Judgment on the Pleadings is **GRANTED** with respect to CDR's sixth, ninth, fourteenth, nineteenth, and twentieth affirmative defenses, and the portion of CDR's fifth affirmative defense that asserts CDR would have taken the same actions absent any discriminatory motive; and

(7)   The Motion for Partial Judgment on the Pleadings is **DENIED** with respect to CDR's first and fifteenth affirmative defenses, and the portion of CDR's fifth affirmative defense that asserts CDR acted for legitimate, non-discriminatory reasons;

(7)   A telephonic Status Conference is **SET** for **April 16, 2025 at 1:00 p.m.** for purposes of setting a Final Pretrial/Trial Preparation Conference and trial in this matter.  Counsel for the Parties shall participate using the following dial-in information:  **571-353-2301; Access Code: 783456374**

DATED:  March 31, 2025                    BY THE COURT:

Nina Y. Wang
United States District Judge